IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACEVEDO-CONCEPCION, *et al*,<br><br>**Plaintiffs**<br><br>v.<br><br>IRIZARRY-MENDEZ, *et al*,<br><br>**Defendants.** | **CIVIL NO.** 09-2133 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). (Docket No. 17). For the reasons stated below, the Court **GRANTS** in part Defendants' motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs state that they were all hired and appointed to career positions within the Puerto Rico Department of Family Services (the "Department") between July and September 2008. (Docket No. 1, p.5). Shortly thereafter, Luis Fortuño-Burset was elected Governor of Puerto Rico, and entered in office on January 2009. *Id.* Governor Fortuño then appointed Yanitzia Irizarry-Mendez as Secretary of the Department. *Id.* As part of an effort to address the Puerto Rico government's financial situation, Governor Fortuño signed into law Act No. 7 of March

9, 2009 ("Act 7"). The enforcement of this law resulted in the dismissal of thousands of government employees. In May 2009, Co-Defendant Irizarry handed Plaintiffs a letter that notified them of their dismissal pursuant to Law 7. (*Id.* p.6).

In essence, Plaintiffs argue that Defendants discriminated against Plaintiffs on the basis of their political affiliation and that they were deprived of their jobs without due process of law. (Docket No. 1, ¶ 22). Plaintiffs contend that, although dismissals authorized by Act 7 were to be made on the basis of seniority, the government did not "make a scientific study of the seniority status of the employees before determining who would be dismissed." (*Id.*, ¶¶ 24-25). Furthermore, at no point did the government make this data available to the employees. (*Id.*, ¶ 26). Finally, the government did not afford Plaintiffs a meaningful opportunity to question the decision to terminate them from employment. (*Id.*, ¶ 27).

On November 5, 2009, the Plaintiffs filed the complaint at bar. Named as co-defendants were Yanitsia Irizarry-Mendez ("Irizarry"), in her personal and official capacity as Secretary of the Department; and Esteban Pérez Ubieta ("Pérez"), in his personal and official capacity as Administrator of the Department. The complaint was also directed against Irizarry and Perez's respective conjugal partnerships. Plaintiffs allege that their civil rights were violated pursuant to 42 U.S.C. §§ 1981,

1983, 1985 and 2000(d); and the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Additionally, Plaintiffs invoke supplemental jurisdiction as to their claims under Puerto Rico law.[1] Plaintiffs seek money damages, along with an injunction ordering Defendants to reinstate Plaintiffs to their jobs. (Docket No. 1). Defendants now move the Court to dismiss the above-captioned complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 17).

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-

---

[1] Plaintiffs bring causes of action under Sections 1, 4, 6 and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico and under the following Puerto Rico laws, copied verbatim from the complaint: "Law No. 114 of May 7, 1942, 29 L.P.R.A. ' 140 et seq.; Law No. 100 of June 30, 1959, 29 L.P.R.A. ' 146 et seq.; Law No. 5 of October, 14, 1975, as amended, 3 L.P.R.A. ' 1331 et seq.; Art. 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. ' 5141." (Docket No. 1, ¶ 48-49).

pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." *Id.* Finally, the court must assess whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." *Id.*

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." *Id.* at 13.

## ANALYSIS

We start by addressing the core of Plaintiffs' complaint: their claims of political discrimination under the First Amendment, and of violations of due process under the Fifth and Fourteenth Amendments.

Political Discrimination

A *prima facie* case of political discrimination under the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010). The complaint solidly establishes the existence of elements one and three. Specifically, the complaint alleges that Plaintiffs are "persons identified with the Popular Democratic Party (PDP)," and that both Co-Defendants are "members of the NPP, a fact well known in [their] workplace and in [their] communities]." (*Id.* ¶¶ 4, 31-32). It is also unquestioned that Plaintiffs suffered an adverse employment action because they were laid off in 2009. (Docket No. 17, p.14). Thus, prongs two and four of the Lamboy-Ortiz test remain to be determined; namely, whether Co-Defendants Irizarry and Pérez were aware of the Plaintiffs' political affiliation, and whether that was the motivating factor in their dismissal. We find that the complaint fails to satisfy either requirement.

Plaintiff's only explicit statement as to Co-Defendants' awareness of their political affiliation is that they are "all

active members of the PDP, a fact well known in their workplaces and in their communities." (Docket No. 1, ¶ 33). We already noted that the complaint satisfied the first prong of the Lamboy-Ortiz test by stating that Plaintiffs were persons identified with the PDP. Paragraph thirty-three of the complaint merely adds that this fact was "well known in their workplaces and communities." (*Cf.* Docket No. 1, ¶¶ 4 and 33). "[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (internal quotation marks omitted). Paragraph thirty-three is one of those statements.

In Ocasio-Hernández, the First Circuit required plaintiffs to plead "discrete factual events" to show that defendants were aware of plaintiffs' political beliefs. Ocasio-Hernández, 640 F.3d at 14-15. According to the First Circuit, it was sufficient for plaintiffs to allege that 1) they were asked by defendants about "the circumstances pertaining to how and when they got to work at [the Governor's mansion];" 2) "that the clerical staff inquired directly into the plaintiffs' political affiliations;" and 3) "that employees at [the Governor's mansion] knew, and commonly discussed, the political affiliations of their co-

workers." *Id.* at 15. Here, however, the complaint is bare of "discrete factual events" that lead us to the same conclusion. *Cf.* Ocasio-Hernández, 640 F.3d at 14-15. Plaintiffs do not allege, directly or indirectly, that Co-Defendants had personal knowledge of Plaintiffs' political affiliation. Nor does the complaint supply a factual basis on which the Court can reasonably infer that either Co-Defendant had *any* awareness of Plaintiffs' political leanings. Plaintiffs never allege, for example, that the political affiliation of employees was commonly shared and discussed, or that Co-Defendants ever questioned Plaintiffs regarding their preferred political party. In any case, we are not required to "conjure up unpled allegations" to support Plaintiffs' deficient complaint. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). In sum, the complaint at bar fails to show that Defendants were aware of Plaintiffs' political affiliation.

The complaint is also nowhere near meeting the fourth requirement of Lamboy-Ortiz; that is, that political discrimination was a motivating factor in Plaintiffs' dismissal. To make out this facet of the *prima facie* case, Plaintiffs must do more than merely juxtapose "a protected characteristic – someone else's politics – with the fact that the plaintiff was

treated unfairly." Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (internal citation omitted).

In this regard, the complaint is bursting with legal conclusions and boilerplate language. For example, Plaintiffs aver that after the NPP assumed power, "defendants began a pattern of discrimination and harassment against plaintiffs," and continued this pattern until they were terminated in July, "all because of their political affiliation and beliefs..." (Docket No. 1, ¶ 5). Further, that the "actions of defendants were solely motivated by plaintiffs' political beliefs." (Docket No. 1, ¶ 37). The complaint also asserts, without more, that Co-Defendants conspired to discriminate against Plaintiffs for the same reasons. (Docket No. 1, ¶ 22). However, after trimming the complaint of legal conclusions and threadbare facts, there is nothing left that would allow a plausible inference that Plaintiffs' termination was politically motivated. "[A] plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 53 (1st Cir. 1990).

Again, we turn to Ocasio-Hernández for guidance in this analysis. There, plaintiffs stated that rumors spread about a list of PDP-affiliated workers who were to be terminated.

Ocasio-Hernández, 640 F.3d at 18. Defendants were also accused of making disparaging remarks about the previous PDP administration, and of inquiring into plaintiffs' political affiliation. *Id.* Plaintiffs highlighted that they were fired and replaced less than ten weeks after Governor Fortuño assumed office. *Id.* That was enough for the First Circuit to find that the complaint allowed for a plausible inference of political discrimination. The instant complaint, however, does not state an analogous set of facts that would allow for the same inference. At most, Plaintiffs charge the government with disregarding the procedure spelled out by Act 7 prior to Plaintiffs' termination. It is *conceivable* that this failure was due to political discrimination. However, Iqbal requires that the claims be *plausible*, not merely possible.[2] Ashcroft v. Iqbal, 129 S.Ct. at 1951 (internal punctuation omitted).

The Court is mindful that heightened specificity is not necessary; "the statements need only give the defendants fair notice of what the claim … is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89 (2007) (internal punctuation omitted). However, a complaint does not suffice when

---

[2] We find it important to note that, since Act 7 authorized dismissals based on seniority, the span of time of a plaintiff's employment would be highly relevant to stating a plausible claim of discrimination. However, the complaint makes absolutely no mention of how long each plaintiff spent in the employment of the Department.

it simply "tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S.Ct. at 1949 (internal punctuation omitted). The Court finds that the complaint, taken as a whole, does not state a plausible claim of political discrimination.

Procedural Due Process

Defendants also argue that Plaintiffs have failed to state a cognizable claim for violations of due process.[3] To prevail on this claim, Plaintiffs must "identify a protected liberty or property interest, and allege that the defendants, acting under color of state law, deprived them of that interest without constitutionally adequate process." Aponte-Torres v. University Of Puerto Rico, 445 F.3d 50, 56 (1st Cir. 2006) (internal punctuations and citations omitted.) Property interests are not created by the Constitution, but rather by independent sources such as state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Pursuant to Puerto Rico law, career or tenured employees have a property right in continued employment. *See e.g.* Marrero-

---

[3] The complaint never specifies whether the due process violations are procedural or substantive in nature. However, the allegations in the complaint outline a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment. The Court will treat them as such.

Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007); Gonzalez v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004).

From the outset, the complaint states that all Plaintiffs "occupied career positions within the Family Department," prior to their dismissal by Co-Defendants.[4] (Docket No. 1, ¶ 12). Further, Co-Defendants ostensibly acted under color of state law, because the termination letters given to Plaintiffs were "authorized by Act 7," and because they were both state officials. (Docket No. 1, ¶ 29). Thus, the issue here is whether Plaintiffs were deprived of their "constitutionally adequate process" prior to their termination.

Generally, individuals with a property interest in their employment are entitled to some sort of hearing prior to their termination. Board of Regents v. Roth, 408 U.S. at 569-70. Defendants invoke the so-called "reorganization exception" recognized in Duffy v. Sarault, 892 F.2d 139 (1st Cir. 1989),

---

[4] This is a prime example of a legal conclusion. However, in contrast to their unsubstantiated political discrimination claims, Plaintiffs provide here specific factual enhancements allowing the Court to infer that they indeed were career employees. Namely, the complaint states that: "Plaintiffs' positions are not of trust and confidence, and they did not have responsibilities with respect to policy making, nor did they act as advisors, nor did they formulate plans for the broad goals of the agency, nor did they occupy any confidential relationship to the policy making process, nor did they have any access to confidential information [that] could influence policy making decisions." (Docket 1, ¶ 41).

for the proposition that not all employees are entitled to a pre-termination hearing. This exception applies when a reorganization or cost-cutting measure results in the dismissal of employees, as long as those measures are not pretext for unlawful political discrimination. *Id.* Plaintiffs, on the other hand, counter that regardless of the "reorganization exception," Defendants did not follow the procedure for layoffs contemplated by Act 7. Specifically, the complaint stresses that Act 7 authorizes the dismissal of employees strictly on a seniority basis (Docket No. 1, p. 6); that no seniority lists were provided to Plaintiffs in order to ascertain whether their seniority status had been properly recognized (*Id.*); that the government had failed to make a study of seniority status before determining who would be dismissed (*Id.*); and that the government did not afford Plaintiffs an opportunity to question the decision to terminate them based on their alleged seniority status. (*Id.*).

    In our view, Defendants' argument is unavailing. According to Defendants, Act 7 was a "cost-cutting measure taken as part of a reorganization plan." (Docket 17, p.16). However, the complaint clearly establishes that the government did not follow the procedures contemplated by Act 7 in dismissing Plaintiffs. We fail to see how the Duffy "reorganization exception" allows

the government to sidestep the procedural safeguards implemented by the very statute that allows for cost-cutting layoffs in the first place. The Court therefore finds that the complaint establishes a plausible procedural due process violation claim.

<u>Section 1983 claim against defendants in their personal capacity</u>

Our analysis under due process must continue, however, because Plaintiffs also seek damages against defendants Irizarry and Perez in their personal capacity based on section 1983. This statute creates "no independent substantive right, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." <u>Cruz-Erazo v. Montanez</u>, 212 F.3d 617, 621 (1st Cir. 2000). Liability attaches where the constitutional injury "(1) [is] committed by a person acting under color of state law" and (2) "[deprives] a person of rights, privileges or immunities secured by the Constitution of the United States." *See* <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)). We have already found that the complaint shows that Defendants were acting under color of state law, and that Plaintiffs' constitutional rights to due process were plausibly violated.

However, the second element outlined in <u>Parratt</u> requires that a direct causal connection be drawn between the defendants

and the alleged constitutional violation. *See* Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989); *see also* Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997). Section 1983 does not allow liability to be imposed on an official on the basis of *respondeat superior*. Ayala-Rodriguez v. Rullan, 511 F.3d 232 (1st Cir. 2007). As such, Plaintiffs must show that each individual defendant was personally involved in the alleged constitutional violation. Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997). This last step is where the instant complaint fails.

To be sure, the issue is whether the complaint plausibly establishes a causal connection between Co-Defendants' actions and the fact that the government did not follow proper Act 7 procedures in dismissing Plaintiffs. The only salient fact asserted by the complaint in this regard is that "co-defendant Irizarry handed plaintiffs letters removing them from their position with the Family Department." (Docket 1, ¶ 28). Defendants counter that this action merely reflects a ministerial act taken by Irizarry in compliance with Act 7.[5] In our view, even if it were true that Co-Defendants authorized Plaintiffs' dismissal, the complaint would still fail to

---

[5] The Court also notes that the complaint does not clarify whether the letters of dismissal were authorized by either Co-Defendant.

establish that either Co-Defendant is *personally* liable for the government's failure to follow the process established by Act 7.

For instance, the complaint does not assert that either Co-Defendant had a say in the determination of seniority status of Plaintiffs. Neither is it averred that Co-Defendants were responsible for the publication or dissemination of the seniority lists to Plaintiffs. Finally, it is not alleged that either Co-Defendant was in charge of – or had any control over – giving Plaintiffs an opportunity to review the basis for their termination. Simply put, all of the alleged facts in the complaint that allow for an inference of a plausible due process claim against the *state*, are not reasonably attributable to Co-Defendants in their personal capacity. As such, the Court dismisses Plaintiffs' section 1983 claim against the individual Defendants in their personal capacity.

Conspiracy

We now turn to Plaintiffs' contention, under 42 U.S.C. § 1985[6], that the Defendants conspired to discriminate against them due to their political inclinations. This Court is hard pressed

---

[6] Though Plaintiffs do not specify under which of § 1985's three subsections their claim is grounded on, the facts alleged in the complaint clearly point to § 1985(3). This statute prohibits two or more people from conspiring for the purpose of depriving any person of the equal protection of the laws. 42 U.S.C. § 1985(3).

to find that the complaint establishes a plausible claim of conspiracy. In any event, this claim may be disposed of on other grounds. The First Circuit has explicitly "decline[d] to extend § 1985(3)'s protection to political affiliation." Perez Sanchez v. Pub. Bld. Auth., 531 F.3d 104, 109 (1st Cir. 2008). Thus, Plaintiffs political discrimination conspiracy claim are futile and hereby dismissed.

Sovereign Immunity, Qualified Immunity, and Insufficient Service of Process[7]

Finally, we reach Defendants' arguments concerning sovereign immunity. The Eleventh Amendment bars federal courts from entertaining actions against non-consenting states. Seminole Tribe v. Florida, 517 U.S. 44 (1996).[8] Sovereign immunity also protects state agents against suits brought in their *official* capacity because, after all, the real party in interest is the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985)(This type of claim is simply "another way of pleading an action against an entity of which an officer is an agent."). The

---

[7] Because the Court dismisses Plaintiffs claims against Defendants in their personal capacity on other grounds, we do not find it necessary to reach their arguments regarding qualified immunity and insufficient service of process.

[8] This protection extends to the Commonwealth of Puerto Rico. Fernandez v. Chardón, 681 F.2d 42, n.13 (1st Cir. 1982). Further, Plaintiffs have not alleged that the Commonwealth has waived its immunity in any way.

scope of protection afforded to the Commonwealth against official-capacity claims is broad. First, neither injunctive nor declaratory relief is available in federal court against the Commonwealth for violations of its own laws. Díaz-Fonseca, 451 F. 3d 13, 43 (1st Cir. 2006). Simply put, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). Second, the Eleventh Amendment prohibits retroactive relief (that is to say, monetary compensation) against states for violations of state or federal law. In contrast, sovereign immunity does not bar suits seeking prospective relief – either injunctive or declaratory – against a state for violations of federal law. Edelman v. Jordan, 415 U.S. 651, 666-667 (1974).

Defendants argue, and Plaintiffs do not dispute, that the claims seeking monetary compensation should be dismissed as barred by the Eleventh Amendment. We agree; the Commonwealth is immune to Plaintiffs' official-capacity claims inasmuch as they seek retroactive monetary compensation. However, the complaint also petitions for prospective injunctive and declaratory relief

on the basis of federal law.[9] This is clearly allowable under Edelman v. Jordan, *supra*.

In summary, we conclude that sovereign immunity shields the Commonwealth from all but prospective injunctive and declaratory relief on the basis of federal law. It is important to note that the scope of such relief would necessarily be "constrained by principles of comity and federalism." Pennhurst State School & Hosp. v. Halderman, 465 U.S. at n.13.

As a final note, Plaintiffs argue that sovereign immunity does not apply where "the relief sought in the federal suit is damages to be paid out of the official's own pocket," regardless of whether the violations are state or federal in origin. Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 530 (1st Cir. 2009). Unfortunately for Plaintiffs, we found above that the complaint did not state a valid claim against either Co-Defendant in their personal capacity. Thus, relief under this theory is not available.

---

[9] Specifically, Plaintiffs ask that the Court issue an injunction "ordering the defendants to reinstate plaintiffs to their prior or equivalent position and/or functions which they held" before they were terminated; and "that defendants be further enjoined from discriminating against the plaintiffs because of their political beliefs." (Docket No. 1, ¶ 7).

**CIVIL NO.** 09-2133 (JAG)                                                                 19

State Law Claims

As we mentioned above, a federal court may not grant monetary, injunctive or declaratory relief against a state for violations of its own laws. Thus, Plaintiffs' official-capacity suit does not entitle them to any relief under state law. On the other hand, we dismissed in their entirety the personal-capacity claims against Co-Defendants. As such, there is no avenue by which Plaintiffs would be entitled to relief under the pendent state-law claims. Accordingly, those claims shall be dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss. Plaintiffs' claims relating to political discrimination and conspiracy shall be dismissed **with prejudice.** Further, their pendent state law claims, as well as those against Co-Defendants Irizarry and Perez in their personal capacity shall also be dismissed **with prejudice**. Plaintiffs' procedural due process claim against Defendants in their official capacity remains.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of December, 2011.

                                                    S/ Jay A. Garcia-Gregory
                                                    United States District Judge