```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| ACEVEDO-CONCEPCIÓN, et al,<br><br>**Plaintiffs,**<br><br>v.<br><br>IRIZARRY-MÉNDEZ, *et al*,<br><br>**Defendants.** | CIVIL NO. 09-2133 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

Pending before the Court is the Defendants' motion for summary judgment. (Docket No. 55). Plaintiffs timely opposed. (Docket No. 61). For the reasons that follow, the Court **GRANTS** judgment independent of Defendant's motion under Fed. R. Civ. P. 56(f)(2).[1]

**STANDARD OF LAW**

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and

---

[1] Rule 56(f)(2) allows a trial court to grant summary judgment on grounds not raised by the movant. A court issuing such a judgment must provide "notice and a reasonable time to respond." Id. Therefore, the Court will grant the parties 14 days from the date of entry of this opinion to file any objections to the same.

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite,

competent evidence to rebut the motion." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

The uncontested facts, as set forth in Defendants' Motion for Summary Judgment and admitted by Plaintiffs, read as follows:

1. Plaintiffs were appointed as career employees of the Family Department between July 1, 2008 and September 4, 2008.

2. On March 9, 2009 former Governor Luis A. Fortuño Burset signed into Law Act 7 of March 9, 2009 (Act 7).

3. Act 7 empowered government agencies, including the Family Department to dismiss thousands of government employees such as plaintiffs.

4. On or about May 29, 2009 co-defendant Irizarry handed letters to plaintiffs removing them from their position within the Family Department.

5. Plaintiffs held career positions within the Family Department until July 10, 2009.

6. None of the plaintiffs had worked within the Family Department for more than one (1) year and ten (10) days.

7. The dismissal of plaintiffs was authorized by Act 7.

8. Section 37.04 of Act 7 details the procedures and rights plaintiffs had regarding their layoffs.

9. JREF means the Fiscal Restructuring and Stabilization Board created pursuant to Section 37.04(b)(5) of Act 7, which was created to achieve the objectives of Chapter 3 of Act 7, and which was entrusted with taking all the necessary actions for compliance with the same.

10. Pursuant to Section 37.04(b) 3 of Act 7 the layoff of employees with a permanent or career appointment were to be implemented by exclusive observance of the seniority criteria, so that those who have less seniority shall be the first ones to be laid off.

11. The JREF was created by Section 37.04(b)(5) of Act 7 and included the President of the GDB (Government Developmental Bank), who directed the Board, the Secretary of Labor, the Secretary of the Department of Economic Development and Commerce of Puerto Rico, the Secretary of the Department of the Treasury of Puerto Rico and the Executive Director of OMB (Office of Management and Budget).

12. The JREF had the powers necessary and convenient to undertake the tasks entrusted to it by Act 7, including but not limited to conduct or direct the agencies or departments that are in its charge, to conduct the needed studies; require of the agencies the information needed to perform its tasks.

13. The JREF was tasked with the responsibility of determining the total number of employees to be laid off.

14. Pursuant to Act 7 the agencies had to identify and certify the seniority of each of its employees to the JREF within a term not greater than fifteen (15) calendar days after the beginning of Phase II. In that same term the agencies had to certify in writing and individually, the date of seniority as it appears in their records to affected employees.

15. The affected employee had thirty (30) calendar days as of the day of notification, to present in writing to the agency

documentary evidence issued by competent authority or government entity which refuted the certified seniority.

16. If the employee did not refute the seniority determination, said seniority was conclusive for all purposes pertaining to Chapter III of Act 7.

17. If the affected employee disputed the seniority, the agency was not able to make a final determination without first granting a hearing to the employee.

18. If affected by the determination of the agency, the employee could request review by CASARH (Spanish acronym for Appeals Commission of the Public Service Human Resources Administration System) of the final determination made by the agency solely as to his/her seniority, pursuant to the provisions of Article 13, section 13.14 of Act No. 184 of August 3, 2004, and its regulations.

19. The layoffs implemented under Phase II of Act 7 started July 1, 2009 and the JREF established the order in which the layoffs would be implemented.

20. A criterion of 13.6 years of service was established by the JREF as the cutoff date to lay off employees pursuant to Phase II of Act 7.

Case 3:09-cv-02133-JAG-SCC   Document 65   Filed 06/25/13   Page 7 of 17
CIVIL NO. 09-2133 (JAG)                                                7


x

## DISCUSSION

<u>The Scope of the Court's Ruling on the Motion to Dismiss</u>

In their complaint, plaintiffs named as co-defendants Yanitsia Irizarry-Mendez, in her personal and official capacity as the then-Secretary of the Family Department; and Esteban Pérez Ubieta, in his personal and official capacity as the then-Administrator of the Family Department. Plaintiffs pressed claims of political discrimination, and charged Defendants with violating their rights to due process under the Constitution of the United States. Plaintiffs also brought claims under Puerto Rico law. Plaintiffs sought money damages, along with an injunction ordering Defendants to reinstate Plaintiffs to their jobs. (Docket No. 1). Defendants moved to dismiss.

On December 29, 2011, the Court dismissed with prejudice all of Plaintiffs' claims *except* their procedural due process claim against Defendants in their official capacity. In doing so, the Court found that Plaintiffs due process claim was plausible because, in essence, Defendants did not follow the layoff procedure contemplated by Act 7 before terminating the employees.[2] The Court also determined that sovereign immunity

---

[2] Specifically, the complaint stressed that Act 7 authorized the dismissal of employees strictly on a seniority basis (Docket No. 1, p. 6); that no seniority lists were provided to Plaintiffs in order to ascertain whether their seniority status had been properly recognized (Id.); that the Government had failed to make a study of seniority status before determining who would be

barred Plaintiffs' claims for monetary compensation against Defendants in their official capacity but not Plaintiffs' claims for "prospective injunctive and declaratory relief on the basis of federal law." (Docket No. 26).

Now, Defendants argue that the motion to dismiss left no surviving claims against the Defendants because the complaint did not plausibly establish a causal connection between Defendants and the alleged unconstitutional action. (Docket No. 55). Defendants, however, misconstrue the language the Court used to dismiss the claims against Defendants in their *personal capacity* by trying to apply the same reasoning to the claims against Defendants in their *official capacity*. This argument disregards the fact that those are two different claims with two different standards. That the Court dismissed the personal capacity claim has no bearing on the official capacity claim.

In order to sustain an official-capacity claim against a government official for enforcing a state law in an unconstitutional manner, the complaint must allege, merely, that the official had "some connection with the enforcement of the act." Ex parte Young, 209 U.S. 123, 157 (1908). This standard is met here. Simply put, Defendants signed the Plaintiffs'

---

dismissed (Id.); and that the Government did not afford Plaintiffs an opportunity to question the decision to terminate them based on their alleged seniority status. (Id.).

dismissal letters, as authorized by Act 7. Though this action, taken alone, was not enough to establish the type of involvement required to impose personal liability, the Court finds it is more than enough to show they had "some connection" with the enforcement of the act. Thus, Plaintiffs' official-capacity suit against Defendants survived the Motion to Dismiss.

Rule 25 Substitution

Even though Defendants no longer hold their positions as Secretary and Administrator of the Family Department the suit can continue against them pursuant to Rule 25(c) which states "if an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action." Fed.R.Civ.P. 25(c). Rule 25(c) requires no action after a transfer of interest; the judgment will bind the successor of the interest even if he is not named. See, e.g., In re Bernal, 207 F.3d 595, 598 (9th Cir. 2000). Therefore, the claim can continue against current Defendants and it will be binding upon the current officials of the Family Department.

Eleventh Amendment State Sovereign Immunity

Defendants next argue that they are immune from suit under the doctrine of state sovereign immunity. (Docket No. 55). The Supreme Court has consistently held that the Eleventh Amendment

provides immunity to an unconsenting State from suits brought in federal courts by her own citizens as well as by citizens of another state. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). This immunity extends to Puerto Rico in the same manner, and to the same extent, as it does to States. De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991). Furthermore, the Eleventh Amendment may bar actions in which the State is not a named party. See Ford Motor Co. v. Dep't of Treasury of Indiana, 323 U.S. 459 (1945) (overruled on other grounds). Whether a suit is one against the state is determined by the "essential nature and effect of the proceeding." Id. at 464. To illustrate, a suit is generally held to be against the state "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." Dugan v. Rank, 372 U.S. 609, 620 (1963).

Yet, the Eleventh Amendment is not a trump card for any suit; when a suit challenges the constitutionality of a state official's action and asks for "prospective injunctive relief," it is not considered to be a suit against the state. See Ex Parte Young, 209 U.S. 123, 159-160 (1908); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984). Therefore, if the conditions for the Ex Parte Young exception are met, the suit is not barred by the Eleventh Amendment and the criteria for the

general rule that Defendants rely on in their motion for summary judgment are inapplicable.

Ex Parte Young allows the Court to order an injunction governing a state official's future conduct, but not one that effectively awards retroactive monetary relief. Pennhurst, 465 U.S. 89, 102-103 (1984) (restating the holding in Edelman, 415 U.S. 651, 662-63 (1974)). The typical "prospective injunctive relief" issued under Ex Parte Young is an injunction stopping the unconstitutional enforcement of a state law, see, e.g., 209 U.S. 123 (1908), or an order requiring a government official to comply with federal law, see, e.g., Rosie D. ex rel. John D. v. Swift, 310 F.3d 230 (1st Cir. 2002). Plaintiffs' only requested relief that might qualify as "prospective injunctive relief" is their request for reinstatement to their prior positions.[3]

The overwhelming precedent of other circuits and suggestive language from the First Circuit indicates that reinstatement is one type of "prospective injunctive relief" allowed under Young.[4]

---

[3] The Ex Parte Young exception to the Eleventh Amendment only applies when state action is challenged as violating federal law. Pennhurst, 465 U.S. 89, 106 (1984). Plaintiffs' claim easily satisfies this first requirement since Plaintiffs are alleging their procedural due process rights have been violated under the United States Constitution.

[4] Every circuit that has spoken on this issue has held that reinstatement to a previously held position is "prospective injunctive relief" that is not barred under the Eleventh Amendment because of Young. See Nelson v. Univ. of Tex. at

However, we do not have to definitively decide this question, because even if Plaintiffs' claims for reinstatement are not barred by the Eleventh Amendment, the Court finds below that such relief is not warranted.

---

Dallas, 535 F.3d 318, 322-24 (5th Cir. 2008); State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 96-98 (2d Cir. 2007); Meiners v. Univ. of Kan., 359 F.3d 1222, 1232-33 (10th Cir. 2004); Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002); Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 840-42 (9th Cir. 1997); Treleven v. Univ. of Minn., 73 F.3d 816, 819 (8th Cir. 1996); Coakley v. Welch, 877 F.2d 304, 307 (4th Cir. 1989); Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986). As the court in Doe states: "reinstatement would not compensate… reinstatement would simply prevent the prospective violation of Doe's rights which would result from denying him employment in the future." 131 F.3d 836, 841 (9th Cir. 1997).

Furthermore, First Circuit precedent strongly suggests the Circuit would hold that reinstatement is "prospective injunctive relief." See Negron-Almeda v. Santiago, 579 F.3d 45 (1st Cir. 2009) (holding that this Court's reversal of its initial decision that claim against government official in his official capacity for reinstatement was barred by the Eleventh Amendment was correct because that original decision was "obviously wrong"); Fernandez v. Chardon, 681 F.2d 42 (1st Cir. 1982) (the Court vacated this Court's award of back pay to plaintiffs that had been wrongfully demoted but the First Circuit left untouched this Court's order that plaintiffs be reinstated to their prior positions).

Whether Plaintiffs are Entitled to Reinstatement

The Supreme Court has said that a plaintiff that does not show actual injury caused by a due process violation is only entitled to nominal damages. Carey v. Piphus, 435 U.S. 247, 266 (1978) (holding that if plaintiffs' suspensions were justified, then they were only entitled to nominal damages for the violation of their procedural due process rights). This appears to be the case here.

The undisputed facts state that "none of the plaintiffs had worked within the Family Department for more than one (1) year and ten (10) days." (Docket No. 56, No. 6). The parties also agree that "a criterion of 13.6 years of service was established by the JREF as the cutoff date to lay off employees pursuant to Phase II of Act 7." (Docket No. 56, No. 20). It seems apparent to the Court that, because they would have been laid off pursuant to Act 7 even if they had been given a proper hearing, Plaintiffs cannot show they were actually injured by the alleged violation of their due process rights.

The Court in Carey was concerned with precluding the plaintiffs from recovering compensatory damages, leaving open the question of whether the same reasoning applies to a claim for a prospective injunction, such as reinstatement. We believe it does and language from the First Circuit strongly suggests

so. See Whalen v. Mass. Trial Court, 397 F.3d 19 (1st Cir. 2005). In Whalen, even though the First Circuit held the suit barred on Eleventh Amendment grounds, the Court addressed the issue of causation of the plaintiff's injury:

> A plaintiff's entitlement to more than nominal damages in a procedural due process case turns on whether the constitutional violation - the failure to provide a pre-termination opportunity to contest termination - did in fact cause the harm asserted - the loss of the job and related benefits. *If Whalen would have been terminated even after a proper hearing, he would not be eligible for either reinstatement or damages flowing from his unemployment.*

Id. at 29 (emphasis ours). Additionally, other Circuits have held that reinstatement is only proper when the employee would not have been dismissed if his procedural due process rights had been observed. See Hopkins v. Saunders, 199 F.3d 968, 979 (8th Cir. 1999); McGhee v. Draper, 639 F.2d 639, 646 (10th Cir. 1981); cf. Brody v. Vill. Of Port Chester, 345 F.3d 103 (2d Cir. 2003), (holding that reconveyance of plaintiff's property was only appropriate if plaintiff could show that his property would not have been condemned had he been given his procedural due process).

Furthermore, reinstatement is an equitable remedy and the decision whether to award it lies within the sound discretion of the trial court. See Hiraldo-Cancel v. Aponte, 925 F.2d 10, 13 (1st Cir. 1991). In order to issue a permanent injunction, the

court must find 1) that [Plaintiffs] have suffered an irreparable injury, 2) that remedies available at law are inadequate to compensate for the injury, 3) that considering the balance of hardships between the parties, a remedy in equity is warranted, and 4) that the public interest would not be disserved by the injunction. Global NAPs, Inc. v. Verizon New England, 706 F.3d 8, 13 (1st Cir. 2013). Principles of federalism must also be taken into account in determining the availability and scope of equitable relief. See Rizzo v. Goode, 423 U.S. 362, 379 (1976).

Assuming *arguendo* that the first two factors are met, the Court finds that the latter factors dominate this analysis. The third factor, the balance of hardships, strongly tilts in favor of not granting reinstatement. The only hardship plaintiffs suffered was the deprivation of the hearing they were entitled to before being stripped of their career positions. The actual loss of their jobs does not factor in since they would have been dismissed regardless of the hearing. In contrast, if reinstatement were issued, the Government of Puerto Rico would be forced to give jobs to employees that would have been fired legally. As the Supreme Court has said, "it would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any

event and upon lawful grounds." McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362 (1995).

In considering the fourth factor, the public interest, a court can reference the purpose of any underlying legislation and the public's interest in minimizing unnecessary costs to be met from public coffers. Aventure Commc'n Tech. v. Iowa Utils. Bd., 734 F.Supp.2d 636, 667 (N.D. Iowa 2010). The purpose of Act 7 was to establish a comprehensive fiscal stabilization plan to address a fiscal emergency where the Government of Puerto Rico could not meet its operational expenses. P.R. Laws Ann. tit. 3 §§ 8791–8810 (2009); Act 7, March 9, 2009, Docket No. 55 Ex. 2. If the Court reinstates employees that did not meet the seniority requirements to survive dismissal under Act 7, the Court would be directly thwarting this purpose. It would also be against the public interest to force the Government to pay the salaries of these individuals from public coffers when the economic crisis that prompted the passage of Act 7 is still ongoing. Given the totality of the circumstances present, the Court holds that reinstatement is not warranted in this case.[5]

---

[5] The Court notes relief may also be barred because Plaintiffs have not exhausted all possible remedies under state law. See Parratt v. Taylor, 451 U.S. 527, 543-44 (1908) (overruled on other grounds); see also Gonzalez-Cancel v. Partido Nueva Progresista, 696 F.3d 115, 120 (1st Cir. 2012). In Gonzalez-Cancel, the First Circuit held that where a plaintiff fails to use an adequate state process, plaintiff's *substantive* due

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment on grounds not raised in their motion, pursuant to Fed. R. Civ. P. 56(f)(2). The parties are hereby given notice and have until on or before **Wednesday July 10, 2013** to file *simultaneous* responses solely on the issue of whether this Court can and should enter any equitable relief, given that the record shows Plaintiffs did not have sufficient seniority to avoid being laid off pursuant to Act 7.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 25th day of June, 2013.

<div style="text-align:right">

S/ Jay A. Garcia-Gregory
United States District Judge

</div>

---

process claim cannot survive. By analogy, a plaintiff should not be able to bring a *procedural* due process claim without exhausting all available and adequate state remedies for that violation. According to Act 7, the Plaintiffs here had thirty days after notification to refute their seniority determination to the agency, which they did not do. (Docket No. 56). And though they never received notice of that specific determination, they did receive a letter terminating them from employment as authorized by Act 7. (Docket No. 1, ¶ 29). Nevertheless, since we hold that no relief is warranted on other grounds, we find it unnecessary to consider this issue any further.